## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JEFFREY A. LOVITKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No.  1:17-cv-450-CKK |
| | ) | |
| DONALD J. TRUMP, in his official | ) | |
| capacity as President of the United States, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### DEFENDANT'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Donald J. Trump, in his official capacity as President of the United States, respectfully moves to dismiss Plaintiff's Complaint.  In support of this Motion, Defendant respectfully refers the Court to the attached Memorandum of Points and Authorities and Proposed Order.

Date: May 30, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

CHANNING D. PHILLIPS
United States Attorney

CHRISTOPHER R. HALL
Assistant Branch Director
Civil Division

*/s/ Nikhel S. Sus*
Nikhel S. Sus (D.C. Bar No. 1017937)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, D.C. 20530
Tel.:   (202) 514-2071
Fax:   (202) 616-8470
Email: nikhel.s.sus@usdoj.gov

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JEFFREY A. LOVITKY,          )
                                    )
              Plaintiff,      )
v.                             )     No.  1:17-cv-450-CKK
                                    )
DONALD J. TRUMP, in his official     )
capacity as President of the United States,    )
                                    )
              Defendant.     )
_____)

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

I.      The Ethics in Government Act ................................................................................ 3

II.     Defendant's Financial Disclosure Form ................................................................. 5

III.    This Suit .................................................................................................................. 5

STANDARDS OF REVIEW .............................................................................................. 6

ARGUMENT ..................................................................................................................... 7

I.      Plaintiff's Alleged Injuries Are Not Redressable Because The Court Lacks
        Authority To Grant Mandamus Or Declaratory Relief Against the President ........ 7

II.     Plaintiff Has Failed To Meet The Threshold Requirements For Mandamus
        Relief ....................................................................................................................... 9

        A.      EIGA Does Not Confer A Private Right To Compel Compliance
                With The Statute's Financial Disclosure Requirements. ......................... 10

        B.      EIGA Does Not Create A Clear Right To Know Which Liabilities In
                Defendant's Financial Disclosure Are Personal Liabilities, Nor Does
                It Impose A Clear Duty To Provide That Information. ............................ 14

        C.      Plaintiff Lacks Standing Because He Has Alleged No Cognizable
                Injury In Fact ........................................................................................... 16

        D.      Plaintiff's Speculative Allegations Fail To State Plausible Claim To
                Relief ........................................................................................................ 20

III.    Even If Plaintiff Could Meet The Threshold Requirements For Mandamus
        Relief, The Court Should Exercise Its Discretion To Deny Mandamus ............... 22

CONCLUSION ................................................................................................................. 23

# TABLE OF AUTHORITIES

## CASES

*Aguirre v. Meese*,
   930 F.2d 1292 (7th Cir. 1991) ..................................................................... 13

*Am. Fed'n of Gov't Employees, AFL-CIO v. Reagan*,
   870 F.2d 723 (D.C. Cir. 1989) ..................................................................... 23

*Am. Hosp. Ass'n v. Burwell*,
   812 F.3d 183 (D.C. Cir. 2016) .............................................................. 10, 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................ 6, 20, 21, 22

*Baptist Mem'l Hosp. v. Sebelius*,
   603 F.3d 57 (D.C. Cir. 2010) ....................................................................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 21

*Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
   727 F.3d 917 (9th Cir. 2013) ........................................................................ 21

*Blau v. Allianz Life Ins. Co. of N. Am.*,
   124 F. Supp. 3d 161 (E.D.N.Y. 2015) ............................................................. 5

*Coal. for Underground Expansion v. Mineta*,
   333 F.3d 193 (D.C. Cir. 2003) ........................................................................ 6

*Consol. Edison Co. of N.Y. Inc. v. Ashcroft*,
   286 F.3d 600 (D.C. Cir. 2002) ..................................................................... 15

*Costanza v. West*,
   12 Vet. App. 133 (1999) ............................................................................... 21

*Cnty. of Santa Clara v. Trump*,
   2017 WL 1459081 (N.D. Cal. Apr. 25, 2017) ............................................... 8

*Danielsen v. Dole*,
   746 F. Supp. 160 (D.D.C. 1990), *aff'd*, 946 F.2d 1564 (D.C. Cir. 1991) .................... 12

*Dellums v. Smith*,
   797 F.2d 817 (9th Cir. 1986) ........................................................ 11, 17, 19

*Diamond v. Charles*,
   476 U.S. 54 (1986) ........................................................................................ 20

*Dist. Lodge No. 166, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. TWA Servs., Inc.,*
   731 F.2d 711 (11th Cir. 1984) .................................................................. 12

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992).......................................................................... 8, 9

*Friends of Animals v. Jewell,*
   828 F.3d 989 (D.C. Cir. 2016) ........................................................... 18, 19

*Gonzaga Univ. v. Doe,*
   536 U.S. 273 (2002)............................................................................... 13

*Gonzalez v. INS,*
   867 F.2d 1108 (8th Cir. 1989) ................................................................ 13

*In re Cheney,*
   406 F.3d 723 (D.C. Cir. 2005) ......................................................... 10, 15

*In re Kaminski,*
   960 F.2d 1062 (D.C. Cir. 1992) ................................................... 11, 17, 19

*In re Madison Guar. Sav. & Loan Ass'n,*
   173 F.3d 866 (D.C. Cir. 1999) .................................................. 11, 17, 19

*In re Montero,*
   417 F. App'x 133 (3d Cir. 2011) ........................................................... 20

*In re Vazquez,*
   285 F. App'x 931 (3d Cir. 2008) ........................................................... 20

*Int'l Refugee Assistance Project v. Trump,*
   __ F.3d __, __, 2017 WL 2273306 (4th Cir. 2017) ...................................... 8

*Lance v. Coffman,*
   549 U.S. 437 (2007)............................................................................... 20

*Latif v. Obama,*
   677 F.3d 1175 (D.C. Cir. 2012) .............................................................. 23

*Lempert v. Power,*
   45 F. Supp. 3d 79 (D.D.C. 2014), *aff'd,* 618 F. App'x 3 (D.C. Cir. 2015).................... 7

*Lozansky v. Obama,*
   841 F. Supp. 2d 124 (D.D.C. 2012) ...................................................... 7, 9

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)........................................................................ 7, 17

*Mississippi v. Johnson*,
  71 U.S. (4 Wall) 475 (1866) ................................................................ 7, 8

*Moms Against Mercury v. FDA*,
  483 F.3d 824 (D.C. Cir. 2007) ................................................................. 6

*Morales v. U.S. Dist. Court for S. Dist. of Fla.*,
  580 F. App'x 881 (11th Cir. 2014) ......................................................... 13

*Nathan v. Smith*,
  737 F.2d 1069 (D.C. Cir. 1984) .................................................. 11, 17, 19

*New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*,
  208 F. Supp. 3d 142 (D.D.C. 2016) ........................................................ 18

*Newdow v. Bush*,
  391 F. Supp. 2d 95 (D.D.C. 2005) ............................................................ 8

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010) ................................................................ 7

*Postell v. Fifth Third Bank*,
  2013 WL 2043420 (M.D. Fla. Apr. 26, 2013) ........................................ 12

*Protect Our Eagles' Trees  v. City of Lawrence, Kan.*,
  715 F. Supp. 996 (D. Kan. 1989) ........................................................... 13

*Scherer v. United States*,
  241 F. Supp. 2d 1270 (D. Kan. 2003), *aff'd sub nom.*,
  *Scherer v. U.S., Dep't of Educ.*, 78 F. App'x 687 (10th Cir. 2003) ............ 12

*Solis v. City of Fresno*,
  2012 WL 868681 (E.D. Cal. Mar. 13, 2012) .......................................... 21

*Spokeo, Inc. v. Robins*,
  __ U.S. __, __, 136 S. Ct. 1540 (2016) ............................................. 19, 20

*Starbuck v. City & Cnty. of S.F.*,
  556 F.2d 450 (9th Cir. 1977) ................................................................. 12

*Swan v. Clinton*,
  100 F.3d 973 (D.C. Cir. 1996) ............................................................. 8, 9

*United States v. Rose*,
  28 F.3d 181 (D.C. Cir. 1994) ................................................................... 3

**STATUTES**

5 U.S.C. app. 4 § 101-111 ......................................................................... 1, 12

5 U.S.C. app. 4 § 102 ......................................................................................... 3, 4, 14, 15

5 U.S.C. app. 4 § 103 ................................................................................................ 3

5 U.S.C. app. 4 § 104 ..................................................................................... 4, 11, 22

5 U.S.C. app. 4 § 105 ................................................................................................ 3

5 U.S.C. app. 4 § 106 ..................................................................................... 4, 11, 22

5 U.S.C. app. 4 § 111 .............................................................................................. 11

28 U.S.C. § 1361 ................................................................................................ 1, 10

42 U.S.C. § 1983 .................................................................................................... 13

**RULES**

Fed. R. Civ. P. 12 .............................................................................................. 6, 20

**REGULATIONS**

5 C.F.R. § 2634.305 ....................................................................................... 4, 14, 15

5 C.F.R. § 2634.605 ....................................................................................... 4, 22, 23

**OTHER AUTHORITIES**

S. Rep. No. 95-170, *as reprinted in* 1978 U.S.C.C.A.N. 4216 (1977) ................. 11, 13, 22

## INTRODUCTION

Invoking the extraordinary remedy of mandamus, Plaintiff Jeffrey A. Lovitky seeks to compel the President of the United States to explain which of the liabilities listed in the President's financial disclosure form—filed pursuant to the Ethics in Government Act ("EIGA"), 5 U.S.C. app. 4 §§ 101-11—are ones for which he is personally obligated.  Plaintiff, to be clear, does *not* allege that Defendant failed to disclose any liabilities in the financial disclosure form, or that the disclosures were inaccurate.  Plaintiff's only claim is that EIGA entitles him to know the extent to which Defendant is personally obligated for the liabilities listed in his disclosure form.[1]

Plaintiff's Complaint should be dismissed for several reasons.  First, as the Supreme Court and D.C. Circuit have made clear, courts lack authority to grant mandamus or declaratory relief against the President of the United States in his official capacity.  As a result, Plaintiff's claimed injury is not "redressable" by this Court, and he thus lacks Article III standing.

Second, Plaintiff falls far short of pleading any "clear and indisputable" right to relief or duty owed to him, as required by the Mandamus Act, 28 U.S.C. § 1361.  That is because, as the D.C. Circuit and numerous other courts have held, EIGA provides no private right of action or other mechanism for private enforcement.  It instead vests the Attorney General with exclusive authority to bring civil actions to enforce the statute.  For these reasons, no court has permitted a private plaintiff to enforce EIGA's requirements, whether in a suit brought directly under EIGA or under the Mandamus Act.  Even if Plaintiff could clear this initial hurdle, his mandamus claim fails on the merits because nothing in EIGA or its implementing regulations requires a filer to

---

[1] For ease of reference, this Memorandum will use the term "personal liabilities" to refer to liabilities for which an individual is personally obligated, and "non-personal liabilities" to refer to liabilities for which an individual is not personally obligated.

segregate personal from non-personal liabilities in a financial disclosure form. That purported requirement has no textual basis and is purely of Plaintiff's own creation.

Third, for similar reasons, Plaintiff lacks any injury sufficient to establish Article III standing. EIGA does not confer a legally-protected interest upon private plaintiffs sufficient to establish standing, nor has Plaintiff otherwise alleged any cognizable injury in fact.

Fourth, Plaintiff's core allegations are speculative and thus fail to state a plausible claim to a relief, let alone a "clear and indisputable" one. Plaintiff's lynchpin allegation—that Defendant listed both personal and non-personal liabilities in his financial disclosure form—is based on pure guesswork. Plaintiff makes that speculative assertion "on information and belief," and pleads no other facts sufficient to render the allegation plausible. At most, Plaintiff has pleaded facts merely consistent with the possibility that Defendant listed both personal and non-personal liabilities in his disclosure form, but that is not enough to state a plausible claim capable of withstanding a motion to dismiss.

Fifth, even if the Court were to conclude that Plaintiff had standing, that the threshold requirements of mandamus jurisdiction were satisfied, and that Plaintiff's claims were adequately pleaded, it should exercise its discretion to deny mandamus relief. Plaintiff has shown no compelling equitable grounds for granting the extraordinary remedy of mandamus, and doing so would serve only to undermine the detailed review and enforcement scheme Congress codified in EIGA.

For all these reasons, Defendant respectfully requests that the Court dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim.

# BACKGROUND

## I.     The Ethics in Government Act

EIGA establishes "financial reporting requirements for key personnel in each of the three branches of the federal government." *United States v. Rose*, 28 F.3d 181, 183 (D.C. Cir. 1994). The Act requires candidates for certain offices, including presidential candidates, to file financial disclosure reports with the Federal Election Commission ("FEC").  5 U.S.C. app. 4 § 103(e), (c). Those reports are, in turn, forwarded to the Director of the Office of Government Ethics ("OGE") for review.  *Id.* § 103(c).  The report must include, among other things, "[t]he identity and category of value of the total liabilities owed to any creditor . . . which exceed $10,000 at any time during the preceding calendar year."  *Id.* §§ 102(a)(1), (a)(4).  The report "shall" be "made available to the public," upon "written application" by any person.  5 U.S.C. app. 4 § 105(a), (b)(2).

EIGA disclosure reports are made on a standard form issued by OGE, titled OGE Form 278e.[2]  Consistent with EIGA's disclosure requirements, Part 8 of OGE Form 278e requires filers to list reportable liabilities, and provides instructions on which liabilities to list.  *See* Ex. 1, OGE Form 278e.

Neither EIGA nor its implementing regulations nor OGE Form 278e specify whether a filer must report *only* personal liabilities, or must also report certain non-personal liabilities, such as liabilities of a business in which the filer holds an interest.  Although the statute, regulation, and form include various exceptions to the liability disclosure requirement, none of those

---

[2] OGE Form 278e was adopted effective March 2014.  *See* Ex. 1, OGE Form 278e.  This form replaced and superseded a prior form, OGE Form 278.  *See* Ex. 2, OGE Public Financial Disclosure Guide ("OGE Guide") § 2.13 ("The new report form, the OGE Form 278e, replaces the old report form, the OGE Form 278").

exceptions addresses non-personal business liabilities.  *See* 5 U.S.C. app. 4 § 102(a)(4)(A)-(B); 5 C.F.R. § 2634.305(b); Ex. 1, OGE Form 278e, Instructions, at 2.

OGE's website provides some guidance on reporting business liabilities.  It states that filers "do not need to report . . . [l]iabilities of a trade or business, unless the liabilities are unrelated to the operations of that trade or business."  Ex. 3, OGE Guide, Liabilities.  And it adds that "[w]hat constitutes 'unrelated' will vary based on the specific circumstances."  Ex. 4, OGE Guide, Business Assets and Liabilities.

EIGA and its implementing regulations establish detailed procedures for agency review of financial disclosure reports.  *See* 5 U.S.C. app. 4 § 106; 5 C.F.R. § 2634.605.  Under those provisions, reviewing officials must either approve the report if deemed compliant with EIGA, request additional information needed from the filer if deemed necessary, or notify the filer that he is not in compliance with EIGA and recommend remedial steps to assure compliance.  *See* 5 U.S.C. app. 4 § 106(b); 5 C.F.R. § 2634.605(b).

EIGA does not create a private right of action or otherwise contemplate private enforcement.  It instead authorizes the Attorney General alone to bring civil actions based on violations of the statute's financial disclosure requirements.  *See* 5 U.S.C. app. 4 § 104(a)(1) ("The Attorney General may bring a civil action in any appropriate United States district court against any individual who knowingly and willfully falsifies or who knowingly and willfully fails to file or report any information that such individual is required to report pursuant to section 102.").  The statute directs appropriate agency officials to "refer to the Attorney General the name of any individual which such official or committee has reasonable cause to believe has willfully failed to file a report or has willfully falsified or willfully failed to file information required to be reported."  *Id.* § 104(b).

4

## II.       Defendant's Financial Disclosure Form

The following facts are drawn from the allegations in Plaintiff's complaint.  Defendant

filed an executed OGE Form 278e with the FEC on May 16, 2016, when he was a presidential

candidate ("the OGE Form").[3]  Compl. ¶ 1; Compl. Ex. 1, OGE Form.  Part 8 of the OGE Form

lists 16 financial liabilities, identifies the creditors for those liabilities, and describes the nature

and terms of the liabilities.  Compl. Ex. 1, OGE Form, at 57.  Part 8 does not specify whether the

listed liabilities are personal liabilities.  *See id.*  Reviewing officials deemed the OGE Form "in

apparent compliance with the public disclosure requirements of the Ethics in Government Act."

Compl. ¶ 11.

## III.      This Suit

Plaintiff, an attorney proceeding *pro se*, instituted this mandamus action against

Defendant, in his official capacity as President of the United States, on March 14, 2017.  Plaintiff

contends that EIGA and its implementing regulations "require[] disclosure of *only* those

liabilities for which candidates are personally obligated."  Compl. ¶ 17.  Although Plaintiff

claims that Defendant "is personally obligated for *some* of the liabilities listed in Part 8" of the

OGE Form, Plaintiff further alleges—"[u]pon information and belief"—that Defendant "is not

personally obligated for *all*" of those liabilities.  *Id.* ¶¶ 21-22 (emphasis added).  Because

Defendant's OGE Form "did not segregate the liabilities for which [Defendant] is personally

---

[3] The Complaint erroneously relies on Instructions from the outdated OGE Form 278.  Compl. ¶¶ 18-19.  As noted *supra* note 2, Form 278 was superseded by Form 278e, effective March 2014.  Moreover, as shown in Exhibit 1 to the Complaint, Defendant executed Form 278e, not Form 278.  Because Plaintiff attached an executed copy of Form 278e to the Complaint, the Court should consider the Instructions in Form 278e, not the Instructions in Form 278.  *See Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 176 n.7 (E.D.N.Y. 2015) ("[W]here 'the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint.'").

obligated from the liabilities for which he is not personally obligated," Plaintiff asserts that Defendant violated EIGA and its implementing regulations.  *Id.* ¶¶ 23-24.

Plaintiff does *not* allege that Defendant failed to disclose any liabilities in the OGE Form, that any of the disclosures were inaccurate, or that OGE failed to provide Plaintiff with a copy of the Form.  Rather, his claim hinges on his view that Defendant's "failure to specifically identify the liabilities for which he is personally obligated violated" EIGA.  *Id.* ¶ 24.

The Complaint contains a single count, seeking relief under the Mandamus Act compelling Defendant "to specifically identify in Part 8 of his [OGE Form] the liabilities for which he is personally obligated."  *Id.* ¶ 30.  Plaintiff also asks for "a declaratory judgment that [Defendant] violated [EIGA] by failing to specifically identify the liabilities for which he is personally obligated."  *Id.* at 9.

## STANDARDS OF REVIEW

Defendant moves to dismiss the Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), and failure to state a claim under Rule 12(b)(6).  To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim.  *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).  The Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta,* 333 F.3d 193, 198 (D.C. Cir. 2003).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Although Plaintiff is proceeding *pro se*, he is an attorney.  He is therefore "presumed to have knowledge of the legal system" and is "not entitled to the same level of solicitude often afforded non-attorney litigants proceeding without legal representation."  *Lempert v. Power*, 45 F. Supp. 3d 79, 81 n.2 (D.D.C. 2014) (Kollar-Kotelly, J.), *aff'd,* 618 F. App'x 3 (D.C. Cir. 2015).

## ARGUMENT

### I.    Plaintiff's Alleged Injuries Are Not Redressable Because The Court Lacks Authority To Grant Mandamus Or Declaratory Relief Against the President.

Plaintiff lacks Article III standing because this Court cannot grant the requested relief. To establish Article III standing, a plaintiff must demonstrate: (1) an "injury in fact" that is "actual or imminent," and "concrete and particularized"; (2) a "causal connection between the injury" and the challenged action; and (3) a likelihood that the "injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 566-61 (1992).  To satisfy the third element—redressability—a plaintiff must show that the court is capable of granting the relief sought.  *See Newdow v. Roberts*, 603 F.3d 1002, 1010-11 (D.C. Cir. 2010) (plaintiffs could not establish redressability because "[i]t [was] impossible for th[e] court to grant [their requested] relief"); *Lozansky v. Obama*, 841 F. Supp. 2d 124, 132 (D.D.C. 2012) (Kollar-Kotelly, J.) ("Plaintiffs . . . lack standing because the Court cannot issue the requested [relief] . . . and thus cannot redress the [claimed] injury.").

Plaintiff cannot establish redressability here, because the Court lacks authority to grant his request for mandamus and declaratory relief against the President of the United States in his official capacity.  That courts lack such authority is well-settled.  *See Mississippi v. Johnson*, 71 U.S. (4 Wall) 475, 501 (1866) (courts lack jurisdiction "to enjoin the President in the performance of his official duties"); *Newdow*, 603 F.3d at 1013 (plaintiff failed to show redressability where the "only apparent avenue of redress for plaintiffs' claimed injuries would

be injunctive or declaratory relief against . . . the President himself.  But such relief is unavailable. . . . *With regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief.*") (citing *Johnson*, 71 U.S. (4 Wall.) at 499, and *Franklin v. Massachusetts*, 505 U.S. 788, 827-28 (1992) (Scalia, J., concurring)) (emphasis added); *Int'l Refugee Assistance Project v. Trump*, __ F.3d __, __, 2017 WL 2273306, at *27 (4th Cir. 2017) (holding that "the district court erred in issuing an injunction against the President himself," because "'in general, this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties'" (quoting *Franklin*, 505 U.S. at 802-03 (opinion of O'Connor, J.)); *Newdow v. Bush*, 391 F. Supp. 2d 95, 106 (D.D.C. 2005) (plaintiff failed to show redressability "where only an injunction or declaratory judgment against the President can redress plaintiff's injury," and "*the Court is without the authority to grant such relief.  To conclude otherwise, would be to render meaningless the words of the Supreme Court and the D.C. Circuit that injunctions and declaratory judgments may not be issued against the President.*") (emphasis added); *Cnty. of Santa Clara v. Trump*, 2017 WL 1459081, at *29 (N.D. Cal. Apr. 25, 2017) ("extraordinary remedy of enjoining the President himself is not appropriate.").[4]   This Court, too, has previously stated that it "doubts it can issue a writ of mandamus compelling the President to act," though it declined to decide the question because

---

[4] The language in these cases regarding injunctions is equally applicable to requests for declaratory and mandamus relief against the President.  *See Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) (noting that although the court's "discussion is couched in terms of our ability to grant injunctive relief against the President, similar considerations regarding a court's power to issue relief against the President himself apply to [plaintiff's] request for a declaratory judgment," and further noting "that a request for an injunction based on the general federal question statute is essentially a request for a writ of mandamus in this context"); *Bush*, 391 F. Supp. 2d at 106 ("Although the language in these decisions is focused on injunctions . . . the reasoning is equally applicable to declaratory judgments.").

the plaintiff in that case failed to show entitlement to mandamus relief.  *Lozansky*, 841 F. Supp. 2d at 132-33 (Kollar-Kotelly, J.).[5]

Courts have sometimes avoided deciding whether they have authority to issue injunctive or declaratory relief against the President by opting instead to grant such relief against the President's subordinate officials.  *See, e.g.*, *Franklin*, 505 U.S. at 803; *Swan*, 100 F.3d at 976-81. But that is not an option here.  There is no question that Plaintiff's alleged injuries can only be redressed by mandamus and declaratory relief against the President himself.  The President is the only named defendant in this suit, he is named in his official capacity, and the suit explicitly seeks an order (1) compelling the President (and no one else) to provide clarifying information regarding his financial disclosure form, and (2) declaring the President (and no one else) to be in violation of EIGA.  *See* Compl. at 9, Prayer for Relief.  Because this requested relief falls outside the Court's authority, Plaintiff's claimed injury is not redressable and he thus lacks Article III standing.  The Complaint should therefore be dismissed for lack of subject-matter jurisdiction.

## II.     Plaintiff Has Failed To Meet The Threshold Requirements For Mandamus Relief.

Even if Plaintiff's alleged injuries were judicially redressable, his claim would still fail because he has fallen far short of alleging that he is entitled to the extraordinary remedy of mandamus.  "[M]andamus is 'drastic'; it is available only in 'extraordinary situations'; it is hardly ever granted; [and] those invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief."  *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005).  Although the Mandamus Act vests this Court with jurisdiction over "any action in the nature of mandamus

---

[5] As it did in *Lozansky*, this Court can bypass the broader question of whether it has authority to grant Plaintiff's requested mandamus and declaratory relief by holding that, for the reasons outlined *infra* Part II, Plaintiff has failed to show he is entitled to mandamus relief.  *See* 841 F. Supp. 2d at 132-33.

to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361, that jurisdiction "is strictly confined," *In re Cheney*, 406 F.3d at 729.  A "court may grant mandamus relief 'only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff.'"  *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010).  "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction."  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

Here, Plaintiff has failed to satisfy the first two requirements of mandamus relief, because he cannot show a "clear and indisputable" right to relief based on a "clear and compelling" duty owed to him under EIGA.  For similar reasons, Plaintiff lacks standing to pursue his mandamus claim, because EIGA does not confer a legally-protected interest upon private plaintiffs sufficient to give rise to a cognizable injury in fact.  Plaintiff's claim is also deficiently pleaded, because it rests on facially speculative and conclusory allegations.

### A.   EIGA Does Not Confer A Private Right To Compel Compliance With The Statute's Financial Disclosure Requirements.

No court has permitted a private plaintiff to enforce EIGA's financial disclosure requirements, either in a suit brought directly under the statute or under the Mandamus Act.  That is because EIGA does not provide a private cause of action, or otherwise contemplate private enforcement.  The statute instead vests the Attorney General with exclusive authority to bring civil actions based on violations of the statute's financial disclosure requirements.  *See* 5 U.S.C. app. 4 § 104(a)(1).  EIGA further charges the Director of OGE and other agency officials with responsibility for administering the statute, including reviewing and approving financial disclosure reports.  *See id.* §§ 106, 111.

10

The language of EIGA is plain enough, but it finds further confirmation in its legislative history.  A Senate report for the bill that became EIGA emphasizes that the statute "provides the Attorney General with the authority to bring a civil action . . . against any individual . . . who fails to report or inaccurately reports any information which is required to be reported."  S. Rep. 95-170, 140, *as reprinted in* 1978 U.S.C.C.A.N. 4216, 4356 (1977).  The report adds that "it is the intention of the Committee that inadvertent or technical violation[s] be handled by the supervising ethics office through informal means or administrative action short of either a civil penalty under this paragraph or a criminal penalty."  *Id.*  The report makes no mention of private remedies for violations of the statute's financial disclosure requirements.  *See id.*

In recognition of Congress's decision not to include a private right of action in EIGA, the D.C. Circuit and other courts have uniformly rejected private suits to enforce the statute, whether brought under EIGA itself or the Mandamus Act.  *See, e.g.*, *In re Madison Guar. Sav. & Loan Ass'n*, 173 F.3d 866, 868-69 (D.C. Cir. 1999) (per curiam) ("[T]he Ethics in Government Act . . . provides no private cause of action. . . . [T]his court and others have in analogous situations consistently found no congressional intent to create such a cause and have therefore dismissed creative attempts to fashion one.") (citing cases); *In re Kaminski*, 960 F.2d 1062, 1064 (D.C. Cir. 1992) (per curiam) (denying petition seeking to compel Attorney General to appoint independent counsel, because "the Ethics Act is barren of any evidence that Congress intended to create procedural rights in members of the public to have their allegations investigated"); *Nathan v. Smith*, 737 F.2d 1069, 1080 (D.C. Cir. 1984) (Bork, J., concurring) (concurring in dismissal of mandamus action seeking to compel Attorney General to conduct investigation, because EIGA "establishes no mechanism for considering citizen complaints . . . The text contains nothing that even suggests a private cause of action."); *Dellums v. Smith*, 797 F.2d 817, 823 (9th Cir. 1986)

(dismissing similar mandamus action, reasoning that "[b]ecause . . . Congress intended to preclude review at the behest of private citizens," it follows that "Congress did not intend to create procedural rights in private citizens sufficient to support standing to sue."); *Postell v. Fifth Third Bank*, 2013 WL 2043420, at *2 (M.D. Fla. Apr. 26, 2013) (dismissing claim under EIGA's financial disclosure provisions "because Congress vested the Attorney General with the authority to initiate a civil action under 5 U.S.C. app. 4 §§ 101–111 and did not provide individuals with a private right of action in the financial disclosure statute"); *Scherer v. United States*, 241 F. Supp. 2d 1270, 1284 (D. Kan. 2003) (dismissing claim under EIGA because it "does not provide an express or implied private right of action"), *aff'd sub nom. Scherer v. U.S., Dep't of Educ.*, 78 F. App'x 687 (10th Cir. 2003).

These decisions are in accord with a long line of cases holding that where, as here, Congress has decided not to include a private cause of action in a statute, a plaintiff cannot circumvent that decision through a mandamus suit. *See, e.g.*, *Danielsen v. Dole*, 746 F. Supp. 160, 166 (D.D.C. 1990) (dismissing mandamus claim seeking to enforce McNamara-O'Hara Service Contract Act ("SCA"), partly because "the SCA does not confer a private right of action, but rather provides for exclusive administrative enforcement with the Secretary of Labor"), *aff'd*, 946 F.2d 1564 (D.C. Cir. 1991); *Dist. Lodge No. 166, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. TWA Servs., Inc.*, 731 F.2d 711, 717 (11th Cir. 1984) (same); *Gonzalez v. INS*, 867 F.2d 1108, 1110 (8th Cir. 1989) ("[W]e hold that Gonzalez has no private cause of action under [the Immigration Reform and Control Act of 1986,] 8 U.S.C. § 1252(i), and *mandamus is therefore not available*.") (emphasis added); *Aguirre v. Meese*, 930 F.2d 1292, 1293 (7th Cir. 1991) (per curiam) (following *Gonzalez*); *Starbuck v. City & Cnty. of S.F.*, 556 F.2d 450, 459 n.18 (9th Cir. 1977) (dismissing mandamus claim where plaintiff failed to state a

claim under the Raker Act or Administrative Procedure Act); *Morales v. U.S. Dist. Court for S. Dist. of Fla.*, 580 F. App'x 881, 886-87 (11th Cir. 2014) (dismissing mandamus claim seeking to enforce statute requiring prosecutor to present evidence to a grand jury, because statute "nowhere creates a private right of action, express or implied"); *Protect Our Eagles' Trees  v. City of Lawrence, Kan.*, 715 F. Supp. 996, 998 (D. Kan. 1989) (dismissing mandamus claim seeking to enforce the Bald Eagle Protection Act, because "there is no language in that Act purporting to create a private right of action"); *cf. Gonzaga Univ. v. Doe,* 536 U.S. 273, 283-284 (2002) (where no private right of action existed directly under the Family Educational Rights and Privacy Act of 1974, plaintiff could not look to 42 U.S.C. § 1983 to supply a cause of action absent an "unambiguously conferred right").

Here, EIGA provides Plaintiff no private right of action to enforce the statute's financial disclosure requirements, nor does the legislative history show an intent to create one.  The statute instead creates a detailed *administrative* review and enforcement scheme, which is informal and non-adversarial in nature.  This reflects Congress's preference to resolve non-willful violations "through informal means or administrative action," rather than civil actions.  S. Rep. 95-170, 140, *as reprinted in*, 1978 U.S.C.C.A.N. 4216, 4356 (1977).  And EIGA authorizes the Attorney General alone to bring civil actions only as a last resort, when deemed necessary to redress willful violations of the statute.  Nothing in the statute contemplates private enforcement.  Thus, allowing Plaintiff to pursue this mandamus action would defy Congress's intent, frustrate EIGA's carefully-crafted review and enforcement scheme, and usurp the authority of the Attorney General and other agency personnel responsible for enforcing the statute.

Because Congress opted not to provide the private remedy that Plaintiff seeks under EIGA, he has no "clear and indisputable" right to relief warranting mandamus relief.  His claim must therefore be dismissed for lack of subject-matter jurisdiction.

**B.      EIGA Does Not Create A Clear Right To Know Which Liabilities In Defendant's Financial Disclosure Are Personal Liabilities, Nor Does It Impose A Clear Duty To Provide That Information.**

Even if EIGA did confer any private right that Plaintiff could enforce through mandamus, Plaintiff's mandamus claim would fail on the merits.  Central to Plaintiff's claim is his view that EIGA grants him a "clear right to know exactly which of the liabilities listed in Part 8 of [the OGE Form] represent personal obligations" of Defendant, and that Defendant has a corresponding "duty" to provide that information.  Compl. ¶ 26.  But neither EIGA nor its implementing regulations create any such "clear and indisputable" right or duty.

EIGA provides that a financial disclosure report "shall include a full and complete statement with respect to . . . [t]he identity and category of value of the total liabilities owed to any creditor . . . which exceed $10,000 at any time during the preceding calendar year."  5 U.S.C. app. 4 § 102(a)(4).  EIGA's implementing regulations, in turn, track those statutory requirements.  As to the "identity" of reportable liabilities, the regulations provide that "[e]ach financial disclosure report filed pursuant to this subpart shall identify and include a brief description of the filer's liabilities over $10,000 owed to any creditor at any time during the reporting period, and the name of the creditors to whom such liabilities are owed."  5 C.F.R. § 2634.305(a).  And as to the "category of value," the regulations provide that such report "also shall designate the category of value of the liabilities in accordance with § 2634.301(d) of this subpart, using the greatest amount owed to the creditor during the period."  *Id.*

14

As noted, Plaintiff does *not* allege that Defendant failed to disclose any reportable liabilities.  So there is no dispute that Defendant complied with his statutory duty to provide a "full and complete statement" of "total liabilities owed," and that Plaintiff was able to obtain this information.  Plaintiff instead claims that the two provisions discussed above, 5 U.S.C. app. 4 § 102(a)(4) and 5 C.F.R. § 2634.305(a), impose an *additional* requirement on Defendant—*i.e.*, a requirement to explain which of the liabilities listed in his "full and complete" disclosure are personal liabilities.  *See* Compl. ¶¶ 23-24.

But no such requirement appears in EIGA or its implementing regulations.  Where a filer reports both personal and non-personal liabilities in his OGE Form 278e, nothing in the statute or regulations require the filer to take the additional step of identifying which liabilities he is personally obligated to pay.  Thus, even accepting as true Plaintiff's allegation that Defendant's OGE Form included both personal and non-personal business liabilities, *see* Compl. ¶¶ 21-22, Defendant owes *no* duty—let alone a "clear and compelling" duty—to identify which of those liabilities are personal ones.  *See Consol. Edison Co. of N.Y. Inc. v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002) (to warrant mandamus, a "duty must be 'so plainly prescribed as to be free from doubt and equivalent to a positive command . . . . [W]here the duty is not thus plainly prescribed, but depends on a statute or statutes the construction or application of which is not free from doubt," mandamus is inappropriate); *In re Cheney*, 406 F.3d at 729 ("the word 'duty' in § 1361 must be narrowly defined, and . . . a plaintiff's legal grounds supporting the government's duty to him must 'be clear and compelling'").

Insofar as Plaintiff may be contending that Defendant violated EIGA by listing more than just personal liabilities in his OGE Form, such an argument again would be mistaken.  First, as Plaintiff himself acknowledges, Compl. ¶ 18, OGE instructs filers to list non-personal liabilities

in some instances, *see* Ex. 4, OGE Guide, Business Assets and Liabilities.  So there is no

categorical rule against listing non-personal liabilities.  Second, EIGA does not *prohibit*

reporting more than what the law mandates; it merely provides that certain liabilities are "not

required" to be reported.  That makes good sense, as it may not always be clear whether a given

liability is reportable.  For example, neither EIGA nor its implementing regulations clarify

whether a filer must report liabilities of a business in which he holds an interest.  While OGE's

website states that business liabilities should be disclosed when they are "unrelated to the

operations of the business," it adds that "[w]hat constitutes 'unrelated' will vary based on the

specific circumstances," and provides only "general guidelines" for making that determination.

Ex. 4, OGE Guide, Business Assets and Liabilities.  Given this lack of clarity, it would make

little sense to penalize a cautious filer who over-reports liabilities.  Nor is there any basis for

concluding, as Plaintiff does, that such a filer assumes an extra-statutory "duty" to segregate

personal from non-personal liabilities.

Thus, even accepting Plaintiff's allegations as true, he has fallen well short of showing an

"indisputable" right to relief or a "clear and compelling" duty owed to him under EIGA.  His

claim instead rests on an unprecedented and textually-unsupported reading of the statute.  This

provides yet another ground for dismissing the Complaint for lack of subject-matter jurisdiction.

### C.  Plaintiff Lacks Standing Because He Has Alleged No Cognizable Injury In Fact.

The Court also lacks subject-matter jurisdiction over Plaintiff's EIGA claim because he

cannot show any cognizable injury sufficient to establish Article III standing.  As previously

noted, to establish standing, a plaintiff must demonstrate an "injury in fact"—*i.e.*, "an invasion of

a legally protected interest which is (a) concrete and particularized," and "(b) 'actual or

imminent, not conjectural or hypothetical.'" *Lujan*, 504 U.S. at 560.  Plaintiff cannot make that

showing here.

    Because Plaintiff brings suit seeking to enforce an alleged right to information under

EIGA, he can demonstrate Article III standing "only if Congress has created a legal right, 'the

invasion of which creates standing.'" *Nathan v. Smith*, 737 F.2d 1069, 1077 n.2 (D.C. Cir. 1984)

(Bork, J., concurring); *see also Lujan*, 504 U.S. at 578 ("'[t]he . . . injury required by Art. III may

exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'").

But Congress created no such legal right in enacting EIGA, and thus Plaintiff cannot establish

standing to assert this claim (either directly under EIGA or through the Mandamus Act). *Id.*

Indeed, as outlined *supra* Part II.A, Congress did not contemplate private enforcement of EIGA,

choosing instead to vest sole enforcement authority in the Attorney General.  And courts

interpreting other EIGA provisions have pointed to the lack of a private right of action as

persuasive evidence that Congress did *not* intend to confer standing on private citizens.  *See, e.g.*,

*In re Madison Guar. Sav. & Loan Ass'n*, 173 F.3d at 868 ("Our conclusion that Landmark has no

standing is supported and underscored by the fact that the Ethics in Government Act, creating

both the Office of Independent Counsel and this panel, provides no private cause of action."); *In*

*re Kaminski*, 960 F.2d at 1064 (plaintiff lacked standing because EIGA "is barren of any

evidence that Congress intended to create procedural rights in members of the public to have

their allegations investigated"); *Nathan*, 737 F.2d at 1077, 1077 n.2 (Bork, J., concurring)

("Though I discuss only the absence of a private cause of action, the analysis below also

indicates that plaintiffs lack standing to maintain this suit."); *Dellums*, 797 F.2d at 823 ("Because

we conclude that Congress intended to preclude review at the behest of private citizens, we

necessarily also conclude that Congress did not intend to create procedural rights in private

citizens sufficient to support standing to sue.").  Because EIGA does not confer on Plaintiff any "legally protected interest," the invasion of which creates standing, Plaintiff cannot establish an injury in fact based on alleged EIGA violations.

In his Complaint, Plaintiff attempts to avoid this conclusion by relying primarily on a theory of "informational injury," asserting that Defendant's alleged "failure to specifically identify the financial liabilities for which he is personally obligated deprived plaintiff of information that plaintiff is entitled by law to receive."  Compl. ¶ 6.  To establish an informational injury, a plaintiff must show that "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 991-92 (D.C. Cir. 2016).

Plaintiff's claim of informational injury fails for two reasons.  First, as outlined *supra* Part II.A, EIGA's plain text does not confer a right to the information Plaintiff seeks—*i.e.*, identification of those liabilities listed in the OGE Form for which Defendant is personally liable. That alone is fatal to Plaintiff's standing theory.  *See New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*, 208 F. Supp. 3d 142, 157 (D.D.C. 2016) (holding that "Plaintiffs' alleged informational injury" was "not a cognizable injury for standing purposes" where "the disclosure provision upon which Plaintiffs rely . . . does not require the collection of [the] information" to which Plaintiffs claimed entitlement).

Second, Congress's considered decision to vest exclusive enforcement authority of EIGA in the Attorney General, rather than authorizing private citizens to bring suit, undermines Plaintiff's claim of informational injury.  This congressional decision is highly relevant here, since "the existence and scope of an injury for informational standing purposes *is defined by*

18

*Congress*." *Friends of Animals*, 828 F.3d at 992 (emphasis added). Concurring in *Nathan v. Smith*, Judge Bork of the D.C. Circuit emphasized Congress's determination not to create the sort of right that Plaintiff seeks to enforce here, explaining that private plaintiffs could not establish standing under EIGA's independent counsel provision because Congress omitted a private right of action from the statute. 737 F.2d at 1077, 1077 n.2. He noted that congressional intent drives the inquiry into both standing and the existence of a private cause of action, stating that "[t]he two inquiries merge." *Id*.at 1077 n.2. Since his "analysis of congressional intent demonstrate[d] no intent to create a private remedy," he concluded that the "plaintiffs ha[d] no standing" to pursue a mandamus action seeking to enforce EIGA's independent counsel provision. *Id*. Subsequent D.C. Circuit decisions have cited Judge Bork's concurrence approvingly, and reached similar conclusions. *See, e.g.*, *In re Madison Guar. Sav. & Loan Ass'n*, 173 F.3d at 868; *In re Kaminski*, 960 F.2d at 1064; *see also Dellums*, 797 F.2d at 823.

In addition to his deficient claim of informational injury, Plaintiff asserts a second purported injury: that Defendant's alleged "failure to specifically identify his personal financial liabilities renders more difficult the making of informed judgments as to whether his decisions as President may be impacted by personal financial considerations," which, in turn, "impedes the exercise of plaintiff's right to petition members of Congress and other elected officials for the purpose of redressing any actual or potential conflicts of interests." Compl. ¶ 7. But this claimed injury, too, fails on multiple grounds. First, it is not "particularized," because it does not "'affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, __ U.S. __, __, 136 S. Ct. 1540, 1548 (2016). It is instead "precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Supreme Court has] refused to countenance." *Lance v. Coffman*, 549 U.S. 437, 442 (2007). Every citizen shares equally the

purported "injury" to their rights to petition asserted by Plaintiff.  In that sense, the injury is no

way particularized to Plaintiff, but rather is "'a general interest common to all members of the

public,'" which is insufficient to establish standing.  *Id.* at 440.

Second, the claimed injury is not "concrete."  To be concrete, an injury must be "'real'

and not 'abstract.'"  *Spokeo*, 136 S. Ct. at 1548.  Here, Plaintiff does not identify any real harm

to his right to petition elected officials.  For instance, he does not allege that being deprived of

the information he seeks will actually prevent him from petitioning Congress regarding

perceived conflicts of interest.  He instead appears to believe that his access to that information

would make his petitioning efforts more effective.  But Plaintiff's mere "abstract concern . . .

does not substitute for the concrete injury required by Art[icle] III."  *Diamond v. Charles*, 476

U.S. 54, 67 (1986).

Because neither of Plaintiff's alleged injuries satisfy Article III standing requirements, his

claim should be dismissed for lack of subject-matter jurisdiction.

### D.     Plaintiff's Speculative Allegations Fail To State Plausible Claim To Relief.

Plaintiff's mandamus claim also fails because his factual allegations regarding

Defendant's conduct are facially speculative and conclusory.  Such allegations fail to show a

"clear and indisputable" right to relief sufficient to warrant mandamus relief.  *See In re Vazquez*,

285 F. App'x 931, 932 (3d Cir. 2008) (denying mandamus because petitioner's "conclusory and

speculative statements are insufficient to establish a 'clear and indisputable' right to the issuance

of a writ"); *In re Montero*, 417 F. App'x 133, 135 (3d Cir. 2011) (same).  Similarly, to survive a

Rule 12(b)(6) motion, Plaintiff must plead non-conclusory "factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*,

556 U.S. at 678.  The non-conclusory allegations must, if accepted as true, "be enough to raise a

right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  Conclusory allegations, however, are "not entitled to the assumption of truth."  *Iqbal*,

556 U.S. at 680.

Plaintiff's mandamus claim is based on pure guesswork.  He suspects that Defendant *may*

not be personally obligated for *some* of the liabilities listed in the OGE Form.  But he makes that

lynchpin allegation "[u]pon information and belief."  Compl. ¶ 22.  "A bald assertion based upon

'information and belief' does not establish the requisite factual basis" for a court to "grant

mandamus nor does it demonstrate a clear and indisputable right to extraordinary relief."

*Costanza v. West*, 12 Vet. App. 133, 134 (1999).  Nor does the Complaint plead other facts

sufficient to render the conclusory "information-and-belief" allegation plausible.  *See Blantz v.*

*Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926-27 (9th Cir.

2013) (allegations made "on information and belief" were "conclusory" and "insufficient *on*

*their own* to defeat a motion to dismiss") (emphasis added); *Solis v. City of Fresno*, 2012 WL

868681, at *8 (E.D. Cal. Mar. 13, 2012) ("In the post-*Twombly* and *Iqbal* era, pleading on

information and belief, *without more*, is insufficient to survive a motion to dismiss for failure to

state a claim.") (emphasis added).

This pleading deficiency is fatal to Plaintiff's claim.  After all, Plaintiff's allegation that

Defendant's OGE Form included non-personal liabilities is the crux of this suit.  Without that

allegation, there is no support for Plaintiffs' claim that Defendant breached a purported duty

under EIGA to segregate personal from non-personal liabilities in his OGE Form.

At most, Plaintiff has pleaded facts that, if accepted as true and construed favorably to

him, are merely consistent with the possibility that Defendant listed both personal and non-

personal liabilities in his OGE Form.  But such allegations fail the *Iqbal-Twombly* plausibility

test.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'").  Much less do such allegations meet the high bar required for mandamus relief—*i.e.*, violation of a "clear and indisputable" right.  These pleading deficiencies require dismissal of the Complaint.

### III.    Even If Plaintiff Could Meet The Threshold Requirements For Mandamus Relief, The Court Should Exercise Its Discretion To Deny Mandamus.

Even assuming Plaintiff met the threshold requirements for mandamus relief, "whether mandamus relief should issue is discretionary," *In re Cheney*, 406 F.3d at 729, and the Court must "find[] compelling equitable grounds'" to grant such relief, *Burwell*, 812 F.3d at 189.  The Court should exercise its discretion to deny mandamus relief here, for two reasons.  First, Plaintiff has identified no "compelling equitable grounds" warranting mandamus.  Second, there are compelling reasons to *deny* mandamus—namely, to avoid undermining the detailed review and enforcement scheme Congress codified in EIGA.  As noted, EIGA establishes an intricate process for agency review and approval of financial disclosure reports, *see* 5 U.S.C. app. 4 § 106; 5 C.F.R. § 2634.605, and authorizes the Attorney General alone to bring civil actions based on violations of the statute, *see* 5 U.S.C. app. 4 § 104(a)(1).  In enacting EIGA, Congress expressed a preference that non-willful violations be resolved "through informal means or administrative action," rather than civil actions.  S. Rep. 95-170, 140, *as reprinted in*, 1978 U.S.C.C.A.N. 4216, 4356 (1977).  And under EIGA's implementing regulations, a financial disclosure "report which is signed by a reviewing official certifies that the filer's agency has reviewed the report, and that the reviewing official has concluded that each required item has been completed and that on the basis of information contained in such report the filer is in compliance with applicable laws and regulations."  5 C.F.R. § 2634.605(b)(2).

As Plaintiff acknowledges, reviewing officials approved Defendant's OGE Form as compliant with EIGA.  Compl. ¶ 11.  Plaintiff now seeks, albeit indirectly, to second guess that determination by bringing a civil action against the President.  But, as outlined *supra* Part II.A., EIGA does not contemplate such private enforcement, and only envisions civil actions (brought by the Attorney General) as a last resort, when deemed necessary to redress willful violations of the statute.  Moreover, insofar as Plaintiff is indirectly challenging the reviewing officials' decision to approve Defendant's OGE Form, he has failed to plead any facts sufficient to overcome the "presumption of regularity" that attaches to that decision.  *See Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2012) ("'The presumption of regularity supports the official acts of public officers and, *in the absence of clear evidence to the contrary*, courts presume that they have properly discharged their official duties.'") (emphasis added); *Am. Fed'n of Gov't Employees, AFL-CIO v. Reagan*, 870 F.2d 723, 728 (D.C. Cir. 1989) ("We cannot allow a breach of the presumption of regularity by an unwarranted assumption that the President was indifferent to the purposes and requirements of the Act, or acted deliberately in contravention of them.").

In short, granting Plaintiff mandamus relief would serve only to circumvent the detailed review and enforcement scheme created by EIGA, thwarting Congress's decision to vest reviewing authority in the OGE Director and other agency officials, rather than private parties like Plaintiff.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed for lack of subject-matter jurisdiction and failure to state a claim.

Date: May 30, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

CHANNING D. PHILLIPS
United States Attorney

CHRISTOPHER R. HALL
Assistant Branch Director
Civil Division

*/s/ Nikhel S. Sus*
Nikhel S. Sus (D.C. Bar No. 1017937)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, D.C. 20530
Tel.:   (202) 514-2071
Fax:   (202) 616-8470
Email: nikhel.s.sus@usdoj.gov

*Counsel for Defendant*