# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY A. LOVITKY,<br>      Plaintiff,<br>   v.<br>DONALD J. TRUMP, in his official capacity<br>as President of the United States,<br>      Defendant. | Civil Action No. 17-450 (CKK) |

## MEMORANDUM OPINION
(April 10, 2018)

Plaintiff Jeffrey A. Lovitky, an attorney appearing *pro se*, wants to compel Defendant President Donald J. Trump to disaggregate personal liabilities from non-personal liabilities allegedly disclosed together on a government form during the latter's candidacy for President of the United States. Defendant seeks dismissal of the complaint for lack of subject-matter jurisdiction and failure to state a claim.

Upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court **GRANTS** Defendant's [20] Motion to Dismiss the Second Amended Complaint, and DISMISSES this case.

---

[1] The Court's consideration has focused on the following briefing:

- Def.'s Mot. to Dismiss 2d Am. Compl., ECF No. 20 ("Def.'s Mot.");
- Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss 2d Am. Compl., ECF No. 21 ("Pl.'s Opp'n");
- Reply Mem. in Supp. of Def.'s Mot. to Dismiss 2d Am. Compl., ECF No. 24 ("Def.'s Reply"); and
- Notice of Suppl. Auth., ECF No. 25 ("Pl.'s Notice").

1

# I. BACKGROUND

## A. Statutory Framework

In 1978, Congress passed the Ethics in Government Act ("EIGA"), which, in pertinent part, imposes financial disclosure obligations on individuals holding or seeking certain public offices. *See generally* 5 U.S.C. app. 4 §§ 101-11 (2016). For presidential candidates, fulfilling the EIGA's requirements involves filing a financial disclosure report with the Federal Election Commission ("FEC"), which then transmits the report to the Director of the Office of Government Ethics ("OGE"). *See id.* § 103(c), (e); Def.'s Mot. at 3; U.S. Office of Gov't Ethics, *Presidential Candidates*, https://www.oge.gov/web/oge.nsf/Presidential%20Candidates?OpenView (last visited Apr. 9, 2018). Section 105 of the EIGA establishes the minimal requirements for members of the public to obtain copies of these reports through "written application," with certain limitations on their use. 5 U.S.C. app. 4 § 105. If an individual who is required to make financial disclosures under the EIGA "knowingly and willfully falsifies or . . . knowingly and willfully fails to file or report any information" required by the EIGA, the Attorney General may file suit and may be permitted to recover a civil penalty. *Id.* § 104(a)(1).

Executive Branch personnel who must file the above-described report do so through an OGE Form 278e. *See* Def.'s Mot. at 3; Def.'s Ex. 1, ECF No. 20-1.[2] The pertinent portion of this form is "Part 8," where the reporting individual is required to list certain financial liabilities. Def.'s Mot. at 3; Def.'s Ex. 1, ECF No. 20-1. Instructions for Part 8 indicate that the individual must "[r]eport liabilities over $10,000 that you, your spouse, or your dependent child owed at any time during the reporting period." Def.'s Ex. 1, ECF No. 20-1, at 2. With regard to the filer's own

---

[2] Because this document lacks page numbers, the Court shall refer to the ECF page number when referencing this document below.

liabilities, the statutory bases for this instruction are 5 U.S.C. app. 4 § 102(a) & (a)(4), which specify that the EIGA report must include "a full and complete statement" as to "[t]he identity and category of value of the total liabilities owed to any creditor other than a spouse, or a parent, brother, sister, or child of the reporting individual or of the reporting individual's spouse which exceed $10,000 at any time during the preceding calendar year," subject to certain exclusions. Those exclusions consist only of mortgages on personal residences for certain filers, and "any loan secured by a personal motor vehicle, household furniture, or appliances, which loan does not exceed the purchase price of the item which secures it." 5 U.S.C. app. 4 § 102(a)(4); *see also* 5 C.F.R. § 2634.305 (2018) (providing that the report "shall identify and include a brief description of the filer's liabilities over $10,000," with certain further clarifications not relevant here). Moreover, "[w]ith respect to revolving charge accounts, only those with an outstanding liability which exceeds $10,000 as of the close of the preceding calendar year need be reported." 5 U.S.C. app. 4 § 102(a)(4).

### B. Factual Background and Current Posture

According to Plaintiff's Second Amended Complaint, Defendant during his presidential candidacy filed a financial disclosure report with the FEC on OGE Form 278e. *See* 2d Am. Compl., ECF No. 16, ¶¶ 12-13. On May 16, 2016, he "certified his financial disclosures as being 'true, complete and correct.'" *Id.* ¶ 13 (emphasis omitted). Reviewing officials found Defendant's report to be "in apparent compliance with the disclosure requirements of the Ethics in Government Act." *Id.* On approximately December 15, 2016, Plaintiff applied through the OGE's website for a copy of Defendant's report, which he received on December 19, 2016. *Id.* ¶ 15.

On March 14, 2017, Plaintiff *pro se* filed suit against Defendant in his official capacity as President. Compl., ECF No. 1. On July 30, 2017, Plaintiff filed his Second Amended Complaint with Defendant's consent. Notice of Consent, ECF No. 15; 2nd Am. Compl., ECF No. 16.

Plaintiff alleges that Defendant's report includes, in addition to debts for which he is personally liable, others for which his business entities, but not he himself, are liable. *E.g.*, 2d Am. Compl., ECF No. 16, ¶¶ 17, 36, 37. Plaintiff further alleges that this purported "commingl[ing]" of personal and non-personal liabilities "mak[es] it impossible to identify which of the liabilities listed on the financial disclosure report were the liabilities of the President, in violation of [EIGA statutory and implementing provisions]." *Id.* Plaintiff's one-count Second Amended Complaint alleges the President's "non-discretionary duty to specifically identify the liabilities for which he is personally obligated." *Id.* ¶ 46. The mandamus-type relief he requests would "direct[ ] the President to amend his financial disclosure report dated May 16, 2016, for the purpose of specifically identifying any debts he owed during the January 1, 2015 – April 15, 2016 reporting period." *Id.* ¶ 51. Additionally, in his prayer for relief, Plaintiff requests a declaratory judgment that Defendant violated pertinent EIGA statutory and implementing provisions "by failing to provide a full and complete statement of his liabilities on his May 16, 2016 financial disclosure statement." *Id.* at 14.

On August 14, 2017, Defendant filed a motion to dismiss Plaintiff's Second Amended Complaint. Def.'s Mot. Upon completion of briefing, this motion is now ripe for resolution.

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction under Rule 12(b)(1)

A court must dismiss a case pursuant to Federal Rule 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district

court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, still that "[p]laintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

### B. Failure to State a Claim under Rule 12(b)(6)

Pursuant to Federal Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### C. *Pro Se* Attorney Pleadings

The Court reiterates its prior observation that an attorney proceeding *pro se* is "presumed to have knowledge of the legal system," and "[a]s a result, he is not entitled to the same level of solicitude often afforded non-attorney litigants proceeding without legal representation." *Lempert v. Power*, 45 F. Supp. 3d 79, 81 n.2 (D.D.C. 2014) (Kollar-Kotelly, J.), *aff'd*, 618 Fed. App'x 3 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 1465 (2016). Nonetheless, Plaintiff's Second Amended Complaint would be subject to dismissal even if construed as liberally as that of a non-attorney *pro se* litigant.

### III. DISCUSSION

The Court shall begin by evaluating the "irreducible constitutional minimum" of Plaintiff's standing. *Swan v. Clinton*, 100 F.3d 973, 976 (D.C. Cir. 1996) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The redressability prong of this inquiry will involve some consideration of the standards for mandamus jurisdiction and declaratory relief.

### A. Article III Standing

At the threshold, Defendant argues that Plaintiff lacks Article III standing to pursue his claim against the President. Def.'s Mot. at 6. Standing is an element of the Court's subject-matter jurisdiction, and requires, in essence, that a plaintiff have "a personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A plaintiff cannot be a mere bystander or interested third-party, or a self-appointed representative of the public interest; he or she must show that the defendant's conduct has affected them in a "personal and individual way." *Lujan*, 504 U.S. at 560 n.1. "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the

political branches." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341-42 (2014) (internal quotation marks omitted). The familiar requirements of Article III standing are:

> (1) that the plaintiff have suffered an "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bennett v. Spear*, 520 U.S. 154, 167 (1997) (citing *Lujan*, 504 U.S. at 560-61); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Plaintiff argues that Defendant's failure to "specifically identify his liabilities" caused an "informational injury" that establishes his injury-in-fact. Pl.'s Opp'n at 2. Defendant maintains that the statutory scheme does not impose on Defendant the alleged obligation to so specify his liabilities. Def.'s Reply at 15 ("[Plaintiff] cannot establish such an injury here since EIGA does not actually confer a right to the information Plaintiff seeks—*i.e.*, identification of personal liabilities in Defendant's financial disclosure form."). While Defendant's motion was pending, the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") issued a decision finding that a nonprofit organization lacked informational injury that could support standing. *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017). Plaintiff filed a notice to bring this case to the Court's attention, Pl.'s Notice, but he did not take the opportunity to explain whether or how it supports his position. Insofar as the D.C. Circuit found that the nonprofit "has not suffered the type of harm" against which the relevant statute guarded, *id.*, Plaintiff would seem obliged to distinguish the case if he is to draw any support from it.

The Court need not decide whether Plaintiff's alleged injury suffices for Article III standing purposes, because the Court finds that even if there were injury-in-fact, and it were fairly traceable to Defendant's conduct, it is clear that Plaintiff's injury would not be redressable by this Court.

Plaintiff concedes that EIGA does not supply him with a private right of action to sue for non-compliance with the statutory scheme. *See* Pl.'s Opp'n at 8 ("[T]he existence of a private cause of action is not a required element of standing."); *id.* at 36 (urging that "Plaintiff has a right to judicial review, even in the absence of a statutory cause of action"). Rather, he pursues 1) mandamus through a cause of action allegedly available at common law and now authorized as well by 28 U.S.C. § 1361,[3] and 2) in the alternative, declaratory relief under 28 U.S.C. § 2201 (a).[4] *Id.* at 22, 36-41. In order to determine redressability, therefore, the Court will need to evaluate whether Plaintiff can proceed against the President under the mandamus or declaratory judgment statutes. As this consideration will require some interpretation of the underlying EIGA statutory scheme, and could ultimately result in dismissal of the action, "[t]o this extent, mandamus jurisdiction under [28 U.S.C.] § 1361 merges with the merits." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005). By contrast, the Court shall not need to discuss any aspects of the merits in resolving the request for declaratory relief.

---

[3] Because Plaintiff has invoked the statute providing generally for mandamus, and in the absence of any argument that the scope of the common law cause of action exceeds the scope of its codification, the Court does not separately consider the ongoing availability of relief at common law. *See* Pl.'s Opp'n at 38 (arguing that "enactment of 28 U.S.C. § 1361 did not eliminate or narrow the scope of the pre-existing common law cause of action in mandamus cases," without arguing any greater entitlement under the latter). The Court is unaware of any authority indicating that proceeding under the common law cause of action would make any difference in this Court's holding.

[4] Plaintiff does not cite the statutory basis for declaratory relief in his Opposition, but does so in his Second Amended Complaint, ¶ 3.

**B. Mandamus Jurisdiction**

The Court here considers the requirements for mandamus jurisdiction only as part of its inquiry into the redressability prong of Article III standing. The mandamus statute provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (2016). Mandamus is a "'drastic' remedy, 'to be invoked only in extraordinary circumstances.'" *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)). "To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Yet, even when these jurisdictional requirements are met, "a court may grant relief only when it finds compelling equitable grounds." *Id.* (quoting *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005)) (internal quotation marks omitted). "The party seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable." *Id.* (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)) (internal quotation marks omitted). As "Rule 81(b) of the Federal Rules of Civil Procedure long ago abolished the writ of mandamus in the district courts," it is more "technically accurate" to refer to "mandamus-type relief" rather than "petitions for a writ of mandamus." *In re Cheney*, 406 F.3d at 728-29.

As it has observed before, again "[t]he Court doubts it can issue [mandamus-type relief] compelling the President to act." *Lozansky v. Obama*, 841 F. Supp. 2d 124, 132 (D.D.C. 2012) (Kollar-Kotelly, J.). The D.C. Circuit has made abundantly clear that it is not inclined to break ground in granting mandamus-type relief against the President. That court has observed that it has

"never attempted to exercise power to order the President to perform a ministerial duty," *Swan*, 100 F.3d at 978, which is the type of duty that Plaintiff claims he seeks to enforce, Pl.'s Opp'n at 39-40. *See also Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) (finding that "injunctive or declaratory relief against all possible President-elects and the President himself" is "unavailable").[5]

The parties dispute the ongoing validity of certain older D.C. Circuit precedents recognizing that the courts *could* issue mandamus against the President as to a ministerial duty. *See Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 923 (D.C. Cir. 1980); *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 616 (D.C. Cir. 1974) ("*NTEU*").[6] The D.C. Circuit has indicated "[i]t is not entirely clear . . . whether, and to what extent, these decisions remain good law after [the Supreme Court's plurality opinion in *Franklin v. Massachusetts*, 505 U.S. 788 (1992)]." *Swan*, 100 F.3d at 978 ("For while the Court in *Franklin* explicitly left open the question of whether a court may enjoin the President to perform a ministerial duty, it also issued a stern admonition that injunctive relief against the President personally is an extraordinary measure not lightly to be undertaken."). Assuming, *arguendo*, that they are still valid, *NTEU* and *National*

---

[5] The D.C. Circuit also has observed that analysis of whether injunctive, mandamus, or declaratory relief against the President is available follows similar lines. *See Swan*, 100 F.3d at 976 n.1 ("Although the following discussion is couched in terms of our ability to grant injunctive relief against the President, similar considerations regarding a court's power to issue relief against the President himself apply to Swan's request for a declaratory judgment. In addition, we note that a request for an injunction based on the general federal question statute is essentially a request for a writ of mandamus in this context, where the injunction is sought to compel federal officials to perform a statutorily required ministerial duty, and that the declaratory judgment statute does not constitute an independent grant of jurisdiction." (citations omitted)).

[6] In neither case did the D.C. Circuit actually issue such relief. *See NTEU*, 492 F.2d at 616 (recognizing authority to issue mandamus but finding it "most appropriate" to "opt instead" to issue declaratory relief); *Nat'l Wildlife Fed'n*, 492 F.2d at 926-28 (exercising discretion not to issue mandamus or declaratory judgment).

10

*Wildlife* could support Plaintiff's assertion of mandamus jurisdiction only if Defendant's compliance with his disclosure obligations was a "ministerial" duty, which the Court presently shall consider.

"A ministerial duty is one that admits of no discretion, so that the official in question has no authority to determine whether to perform the duty." *Swan*, 100 F.3d at 977 (citing, e.g., *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 498 (1866) ("a ministerial duty . . . is one in respect to which nothing is left to discretion")). Plaintiff's argument that "disclosure of the specific loans for which the President is liable" is a "ministerial duty," Pl.'s Opp'n at 39, is not facially plausible. The EIGA does not specify that only personal liabilities are to be listed, and it does not expressly prohibit the listing of non-personal business liabilities. Defendant argues that he therefore did not have a ministerial duty, but rather had the discretion to choose how he would comply with the EIGA's requirements. *See* Def.'s Mot. at 14 (refuting argument of "non-discretionary duty"); Def.'s Reply at 8 (disputing Plaintiff's argument that "his case is distinguishable because he is seeking to compel performance of a non-discretionary, ministerial duty").

It is true that "a ministerial duty can exist even 'where the interpretation of the controlling statute is in doubt,' provided that 'the statute, once interpreted, creates a peremptory obligation for the officer to act.'" *Swan*, 100 F.3d at 978 (quoting *13th Regional Corp. v. U.S. Dep't of the Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980)). But, as stated above, 5 U.S.C. app. 4 § 102(a) and 5 C.F.R. § 2634.305 do not on their face give any indication of a requirement that Defendant do as Plaintiff wants, nor do they establish that Plaintiff has a "clear and indisputable" right to force Defendant to do so.[7] The Court therefore need not entertain Plaintiff's arguments about the policy

---

[7] Plaintiff also makes an argument that Defendant contravened the instructions on the OGE Form 278e. Specifically, he says that Defendant should have written "None" if he had "no reportable liabilities." Pl.'s Opp'n at 27. But that is not what the instructions say. The instructions indicate

intent of Congress. *Gen. Elec. Co. v. E.P.A.*, 360 F.3d 188, 191 (D.C. Cir. 2004) ("[W]hen the statutory text is straightforward, there is no need to resort to legislative history."). Even if the Court were obligated to examine the legislative history, Plaintiff's various citations do *not* evidence a congressional desire to *prohibit* Defendant from listing non-personal liabilities in an exercise of his discretion. *See* Pl.'s Opp'n at 24-26 (citing, e.g., S. Rep. No. 95-170, 95th Cong., 2d Sess. (1977), p. 119 ("an owner of an interest in a corporation *need not* list a loan on which he is not personally liable" (emphasis added)). And Plaintiff cites no case law for the specific proposition that Defendant has a ministerial duty to specify his personal liabilities in complying with EIGA. "The distinction between discretionary and ministerial duties is . . . critical in this case because the courts do not have authority under the mandamus statute to order *any* government official to perform a discretionary duty." *Swan*, 100 F.3d at 977. Plaintiff seeks a favorable exercise of Defendant's discretion to determine how he wanted to comply with EIGA's Part 8; the Court is without power to compel a decision in Plaintiff's favor. If Defendant chose to disclose more than strictly necessary, that would not be unlawful on the basis of any provision that Plaintiff cites.

In light of controlling precedent, the Court would hesitate to issue mandamus even if Defendant's duty to specifically disclose personal liabilities were ministerial, but because the Court has found that it is a discretionary duty, the Court *cannot* do so. Because the Court is unable

---

that the filer should "write 'None'" "if you do not have anything to report." Def.'s Ex. 1, ECF No. 20-1, at 3. Defendant evidently had something to report, otherwise presumably he would have written "None." Even if Plaintiff had accurately characterized the instructions, it is important to note that Defendant is not asserting that he had *no* reportable personal liabilities. Were Plaintiff correct that non-personal liabilities should be disaggregated, Defendant still would not have written "None" because he evidently had some personal liabilities to list. *Cf.* Def.'s Reply at 13 ("[T]here is no express representation in the form that all liabilities listed are personal ones; nor is such a representation implied, because a financial disclosure report may lawfully contain both personal and non-personal liabilities.").

to redress any injury-in-fact that Plaintiff may have, Plaintiff lacks standing to seek mandamus-type relief against Defendant.

***

Plaintiff's remaining arguments are without merit. Here, the Court shall address only a few. Leaving aside the finding that mandamus cannot issue against the President in this case, Plaintiff's argument that Defendant has a duty to Plaintiff that could support mandamus likewise fails. *See* Pl.'s Opp'n at 6-7. The EIGA provides for the filer's duties to the FEC and OGE but not to the public; the only pertinent duty owed to Plaintiff is OGE's duty to provide a copy of the filer's report upon a request meeting the appropriate conditions. *See* 5 U.S.C. app. 4 §§ 103(c), (e); 105(b). "Plaintiff is conflating the public's right to *access* executed reports (which is explicitly codified in EIGA) with a public right to seek a court order compelling a filer to amend or supplement the *contents* of a financial disclosure report (which is not codified or even suggested in EIGA)." Def.'s Reply at 8-9. Only if Plaintiff had a clear and indisputable right and the President owed a duty to him would the Court need to pass on the adequacy of any alternative remedy, and ultimately whether "compelling equitable grounds" warranted an exercise of the Court's discretion to grant mandamus.

The Court also observes that the implications that Plaintiff circuitously draws about "unrelated business liabilities," *see generally* Pl.'s Opp'n at 30-36, are inapposite. Plaintiff argues in effect that OGE guidance did require reporting of a defined set of unrelated business liabilities, but because "none of the business liabilities listed in Part 8 were unrelated to the operations of that business entity," Defendant should not have reported any liabilities (here, business liabilities) except personal liabilities. *See id.* at 30-34. The Court has found that the applicable statutory and regulatory provisions do not prohibit the President from disclosing non-personal liabilities together

13

with his personal liabilities. Plaintiff's discussion of the OGE guidance does not alter that assessment, nor save Plaintiff from its consequences.

In response to the parties' various points about enforcement, the Court notes that the statutory scheme is not without mechanisms for holding the putative errant filer to account. The Attorney General has authority to sue for certain false or deficient reports provided that the filer had the requisite scienter. 5 U.S.C. app. 4 §§ 104(a). Moreover, OGE has a role in reviewing submitted reports and can refer a filer whom OGE has "reasonable cause to believe" fits the aforementioned profile to the Attorney General for prosecution. *Id.* § 104(b). There is no indication that either OGE or the Attorney General-sought enforcement in this case.

### C. Declaratory Relief

As it did with mandamus jurisdiction, the Court also considers declaratory relief only to the extent necessary to determine whether Plaintiff's grievance is redressable and consequently accords him standing. The Declaratory Judgment Act provides that

> In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (2016). As the use of the word "may" suggests, "[t]his language is permissive, not mandatory: even when a suit otherwise satisfies subject matter jurisdictional prerequisites, the Act gives courts discretion to determine 'whether and when to entertain an action.'" *Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72, 76 (D.D.C. 2009) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)). *See also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (observing that the Declaratory Judgment Act "has long been understood 'to confer on federal

14

courts unique and substantial discretion in deciding whether to declare the rights of litigants'") (quoting *Wilton*, 515 U.S. at 286).

As noted above, some older D.C. Circuit precedent recognizes that declaratory relief can be issued against the President. *See NTEU*, 492 F.2d at 616 (declaring "constitutional duty" of President to issue pay increase to certain public employees pursuant to legislation). But as also indicated, the D.C. Circuit has subsequently questioned whether this case law remains valid after *Franklin*. *See Swan*, 100 F.3d at 978. And as of 2010, the D.C. Circuit opined that "a court— whether via injunctive or declaratory relief—*does not* sit in judgment of a President's executive decisions." *Newdow*, 603 F.3d at 1012 (emphasis added) (citing *Mississippi*, 71 U.S. (4 Wall.) at 499 (quoting Chief Justice John Marshall for the proposition that "enforc[ing]" presidential performance is "'an absurd and excessive extravagance'")); *Swan*, 100 F.3d at 976 n.1. That assertion in *Newdow* followed the court's distinguishing of a Supreme Court case that found standing in a challenge to a President's statutory power, but did not concern his executive decisions. *Newdow*, 603 F.3d at 1012 (citing *Clinton v. City of New York*, 524 U.S. 417 (1998)).

Moreover, it is not clear that the Court even would have jurisdiction to grant declaratory relief, for "the declaratory judgment statute does not constitute an independent grant of jurisdiction," *Swan*, 100 F.3d at 976 n.1. If *NTEU* is still valid, the D.C. Circuit has indicated that the mandamus statute is a possible jurisdictional hook for a grant of declaratory judgment. *See NTEU*, 492 F.2d at 616 ("[B]ecause in this case subject matter jurisdiction is present under section 1361, this Court [i.e., the D.C. Circuit] may utilize the tool of declaratory relief."). But because this Court has found that Plaintiff may not avail himself of mandamus jurisdiction, and because

15

Plaintiff does not presently argue any other basis for jurisdiction,[8] the Court finds that Plaintiff has not proven by a preponderance of the evidence that the Court has subject-matter jurisdiction over his request for a declaratory judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that it cannot issue the relief that Plaintiff requests in this case, and accordingly cannot redress Plaintiff's grievance. Because Plaintiff lacks Article III standing, the Court hereby **GRANTS** Defendant's [20] Motion to Dismiss the Second Amended Complaint and DISMISSES this case.

An appropriate Order accompanies this Memorandum Opinion.

Dated: April 10, 2018

                                                  /s/
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge

---

[8] In his Second Amended Complaint, Plaintiff asserts jurisdiction not only pursuant to the mandamus and declaratory judgment statutes but also pursuant to 28 U.S.C. § 1331, which provides for general federal question jurisdiction. 2d Am. Compl., ECF No. 21, ¶ 3. However, Plaintiff does not mention federal question jurisdiction anywhere in his Opposition to Defendant's Motion to Dismiss. In light of this omission, and because Plaintiff concedes that EIGA does not provide for a private right of action, as the Court discusses above, the Court considers Plaintiff to have conceded any argument that he can sue purely on the basis of a federal question.